IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT IN
AND FOR MONROE COUNTY, FLORIDA

LAURIE A. FACSINA

    Plaintiff.

v.

ISLAMORADA, VILLAGE OF ISLANDS d/b/a
PLANTATION YACHT HARBOR MARINA; and
LISA WATTS,

    Defendants.

_____/

CASE NO.:

## **COMPLAINT**

COMES NOW, Plaintiff, LAURIE A. FACSINA ("FACSINA") by and through undersigned counsel, and hereby files this Complaint and in support thereof states, as follows:

### **JURISDICTION, VENUE, and PARTIES**

1. This is an action for damages in excess of $30,000.00 exclusive of interest, attorney's fees, and costs. *See* Fla. Stat. § 26.012(2)(a).

2. This Court has personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193 because FACSINA's claims arise out of Defendants' conducting, engaging in, and carrying on business in Florida; Defendant Islamorada, Village of Islands ("ISLAMORADA") contracting to provide public accommodations in Florida; and Defendants' committing tortious acts in Florida.

3. Venue lies in Monroe County, Florida, pursuant to Fla. Stat. § 47.011 because the cause of action accrued in Monroe County and the subject contract was entered into in Monroe County. *See* Fla. Stat. Section 47.041.

4. FACSINA is a 60-year-old, married, retired financial professional individual residing in Ohio.

Page **1** of 14

5. Defendant ISLAMORADA is municipality incorporated under the laws of the State of Florida and the owner and operator of the Plantation Yacht Harbor Marina.

6. ISLAMORADA includes (a) Plantation Yacht Harbor Marina; (b) Founder's Park; and (c) other parks, beaches, and green spaces – all accessible to the public for distinct fees.

7. ISLAMORADA's Plantation Yacht Harbor Marina slips provide guests with metered electric and water, sewage pump out, Wi-Fi, and sales of unleaded and diesel fuel. The facility includes a boat ramp and dedicated parking area, as well as temporary courtesy daytime dockage for eight to ten Islamorada resident boats during special events. There is a tiki-style social pavilion with grills and an ample trailer parking area. Marina guests also have access to the facilities and activities at the adjacent Islamorada Founders Park.

8. The 45-acre Founders Park is the center of the park system, offering sports programs, recreational programs and facilities, sports coaching and training and facilities for aquatics, golf, soccer, baseball, tennis, volleyball, swimming, and basketball.

9. ISLAMORADA also provides children's recreational camps and supervises, organizes, and supports large charitable public special events such as: Friends of the Pool Aquatic Ball, Bougainvillea Ball, July 4th Celebration & Fireworks, Florida Keys Youth and Masters Swim Meets, Special Olympics Swim Meet, Islamorada Chamber of Commerce Holiday Festival and Island Fest, Upper Keys Rotary Nautical Flea Market, University of Miami Sports Hall of Fame & Habitat for Humanity Fishing Tournament, Bay Jam and several Islamorada Community Entertainment amphitheater events, as well as a wide range of numerous smaller special events.

10. Defendant Lisa Watts, ("ISLAMORADA Dock Master") is an individual residing in Monroe County, Florida, employed by ISLAMORADA.

## FACTUAL BACKGROUND

11. FACSINA and her husband were ISLAMORADA residents having moored their 40-foot trawler in slip number T66 since 2012. *See* **Exhibit A**.

12. In April 2012, FACSINA suffered a catastrophic, permanent leg injury – fracture of the tibial plateau of her right leg ("injury"). *See* **Exhibit B**.

13. Subsequent to FACSINA's injury and corresponding medical treatment, including implantation of plates, pins, rods, screws, and cadaver bone; FACSINA is limited in her daily life by a reconstructed right leg; accompanying hypertension; Paroxymal Atrial Fibrillation or PAF; and Raynaud's Disease.

14. FACSINA qualifies under ADA as a disabled person.

15. Due to the injury, FACISINA frequently needs help completing routine daily activities on account of enduring pain and loss of muscle tone in the limb.

16. The injury also precipitated FACSINA to obtain a prescribed and qualified service-dog for emotional and physical support. *See* **Exhibit C**.

17. Because of the injury and accompanying physical impairments, FACSINA remains under medical management and observation.

18. Slipping is a constant concern for FACSINA.

19. FACSINA's combined physical and emotional condition make the proper function and use of a non-disabled restroom extremely difficult without fear of further injury.

20. From the time of her injury, ISLAMORADA [and Defendant Lisa Watts who was in and about 2012 an Assistant Dock Master] knew of FACSINA's physical limitations.

21. FACSINA provided ISLAMORADA with certain medical information – maintaining privacy pursuant to the Health Insurance Portability and Accountability Act of 1996 or HIPAA.

22. ISLAMORADA granted FACSINA access and use of an entry-coded handicap accessible bathroom, including a permanent, secure shower seat and handrails or bars.

23. FACSINA primarily used the subject handicap accessible bathroom after dark to shower; FACSINA used the shower after regular business hours on account of her work schedule.

24. Another reason FASCINA used the bathroom after hours was because employees used the Bathroom during working hours.

25. FACSINA's use of the handicap accessible bathroom with appropriate shower accommodations permitted her to safely: maneuver around and sit if suffering from an onset of an atrial fibrillation episode. FACSINA's reasonable objective was to bathe without fear of falling in utilizing a non-handicap accessible bathroom with appropriate shower accommodations – and risking further serious injury.

26. ISLAMORADA employees, staff, and residents were also aware of FACSINA's physical and mental limitations, considering and [accordingly] regarding FACSINA as disabled.

27. During the period of 2012-2017, ISLAMORADA permitted FACSINA to use the entry-coded handicap accessible bathroom, even providing a new code when changed.

28. FACSINA was given the entry-code by Tim Morrissey, who was the Dock Master when FACSINA and her husband arrived to ISLAMORADA, and by all subsequent dock masters and staff.

29. FACSINA used the entry-coded handicap accessible bathroom until ISLAMORADA changed the key code in December 2017.

30. On December 25, 2017, FACSINA could not access the bathroom [to take a shower] with the previously used code.

31. On December 26, 2017, FACSINA requested the entry code from ISLAMORADA Assistant Dock Master, Derek Howe.

32. The ISLAMORADA Assistant Dock Master stated that he was unable to give the code to FACSINA because "someone was sharing the code, and that the Dock Master had instructed the staff that only she could give the code out."

33. The ISLAMORADA Assistant Dock Master also stated: "the handicap accessible bathroom was the only restroom marina staff and Monroe County Sherriff's personnel could use."

34. On January 2, 2018, FACSINA visited the marina office and again requested the code but was denied by the ISLAMORADA Dock Master, Lisa Watts.

35. FACSINA reminded the ISLAMORADA Dock Master that she had been using the entry-coded handicap accessible bathroom since 2012 since the unfortunate occurrence of permanent injuries involving her leg and thus needed to continue to use the same.

36. In 2018, no other bathroom and shower ADA compliant handicapped facilities were available on the premises for FACSINA to access and use. *See* **Exhibit D** (depicting photo of a second bathroom ISLAMORADA's claims is ADA compliant but is not).

37. The ISLAMORADA Dock Master inquired as to FACSINA's specific disabilities.

38. The ISLAMORADA Dock Master informed FACSINA that she had to provide a doctor's letter detailing FACSINA's need to use the handicap accessible bathroom before the code to the bathroom would be provided.

39. FACSINA had no alternative but to leave ISLAMORADA and return to Ohio.

40. On January 16, 2018, FACSINA mailed a certified return receipt letter to the IS-LAMORADA Dock Master explaining the situation again, including requesting the code. *See* **Exhibit E**.

41. ISLAMORADA continued to deny FACSINA the access code to the handicap accessible bathroom.

42. In and about early April 2018, FACSINA and her husband [after six years] moved their boat to a different marina with access and use of a proper handicap accessible facility.

43. FACSINA and her husband vacated ISLAMORADA's marina and incurred expenses per towing of the boat to another marina.

44. Plaintiffs have had to relocate numerous times to different marinas, including to Virginia.

45. On or about December 13, 2018, FACSINA filed a public accommodations complaint of discrimination with the Florida Human Relations Commission ("Commission") for "repeated denial of access to the only handicap bathroom and shower at [SIC] the facility. The dockmaster, Lisa Watts, was aware of my disability." *See* **Exhibit F**.

46. In response, the Commission accepted and investigated the complaint brought under the Florida Civil Rights Act of 1992 ("FCRA").

47. ISLAMORADA claimed the code was changed because (a) a new resident in a wheelchair was going to begin living at the marina in 2018 and reasonable rules needed to be established; (b) the new dock master informed FACSINA that only handicapped persons would be permitted to used the coded facilities; and (c) the new dock master wanted FACSINA to provide proof of her disability if she wished to continue using the coded disabled facilities.

48. On June 11, 2020, the Commission determined, on basis of the report from the Commissions Office of Employment Investigations and recommendation from the Commissions Office of General Counsel, that there is reasonable cause to believe that an unlawful practice of discrimination occurred. *See* **Exhibit H**.

49. The Commission found that FACSINA showed that she was denied the full use and enjoyment of ISLAMORADA's premises; that FACSINA's medical conditions qualify as disabilities under FCRA; and that the denial was related to her disability."

50. The Commission also found that ISLAMORADA satisfied the definition of a public establishment under FCRA and failed to meet the burden of proving a legitimate, nondiscriminatory reason for doing denying FACSINA continued access to the disabled bathroom and shower.

51. All conditions precedent to this action have been met, have occurred, or waived.

## COUNT I: VIOLATION OF AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12182(a) – Discrimination in Places of Public Accommodation
### (AGAINST ISLAMORADA)

52. FACSINA reasserts and incorporates by reference paragraphs '1' through '48' as if fully stated herein.

53. FACSINA is disabled: her sustained permanent [reflected by new "metal hardware"] leg injury and accompanying physical impairments substantially limits her ability to breathe and caring for herself including but not limited to the following: sit, stand, walk, bend over, squat, and reach down. FACSINA has significantly reduced mobility and flexibility of her lower right leg. Moreover, over-exertion can trigger FACSINA's atrial fibrillation episodes which cause irregular heartbeats, sudden onset of rapid heart-rate and increase risks of stroke. *See* **Exhibit I**, FCHR Medical Certification Form.

54. FACSINA was discriminated against on the basis of her disability when ISLAMORADA refused to provide FACSINA full and equal enjoyment of the facilities and accommodations in the form of a handicap accessible bathroom and shower.

55. ISLAMORADA operates, manages, controls, and regulates a place of public accommodation: specifically the subject handicap accessible bathroom and shower located within the area including the (a) marina; (b) Founder's Park; and (c) other parks, beaches, and green spaces – all accessible to the public for distinct fees.

## COUNT II: VIOLATION OF CIVIL RIGHTS ACT OF 1964, § 2000a – Prohibition Against Discrimination [or Segregation] in Places of Public Accommodation (AGAINST ISLAMORADA)

56. FACSINA reasserts and incorporates by reference paragraphs '1' through '48' as if fully stated herein.

57. FACSINA is disabled: her sustained permanent [reflected by new "metal hardware"] leg injury and accompanying physical impairments substantially limits her ability to breathe and caring for herself including but not limited to the following: sit, stand, walk, bend over, squat, and reach down. FACSINA has significantly reduced mobility and flexibility of her lower right leg. Moreover, over-exertion can FACSINA's atrial fibrillation episodes which cause irregular heartbeats, sudden onset of rapid heart-rate and increase risks of stroke. *See* **Exhibit I**, FCHR Medical Certification Form.

58. FACSINA is a qualified individual with a disability who, with or without reasonable modification to rules, policies or practices, the removal of architectural, communication or transportation barriers or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in

programs or activities provided by a public entity or private entity that owns, leases, leases to or operates a place of public accommodation.

59. ISLAMORADA knew of FACSINA's catastrophic leg injury and accompanying physical impairments precipitating the request and need for access and use of the entry-coded handicap accessible bathroom with shower.

60. FACSINA was subjected to unlawful discrimination because of her disability when ISLAMORADA refused to provide a reasonable accommodation in the form of a handicap accessible bathroom and shower for FACSINA to access and use.

61. ISLAMORADA cannot prove a legitimate, nondiscriminatory reason for doing denying FACSINA continued access to the disabled bathroom and shower.

## COUNT III: VIOLATION OF FLORIDA CIVIL RIGHTS ACT, § 760.08 – Discrimination in Places of Public Accommodation
### (AGAINST ISLAMORADA)

62. FACSINA reasserts and incorporates by reference paragraphs '1' through '48' as if fully stated herein.

63. FACSINA is a member of a protected class – has a record of a disability and is regarded as having a disability: her sustained permanent [reflected by new "metal hardware"] leg injury and accompanying physical impairments substantially limits her ability to breathe and caring for herself including but not limited to the following: sit, stand, walk, bend over, squat, and reach down. FACSINA has significantly reduced mobility and flexibility of her lower right leg. Moreover, over-exertion, especially in the Florida weather, can and has triggered FACSINA's atrial fibrillation episodes which cause irregular heartbeats, sudden onset of rapid heart-rate and increase risks of stroke.

64. FACSINA contracted for services of a public accommodation with ISLAMORADA when becoming an ISLAMORADA "resident". *See* **Exhibit A**.

65. ISLAMORADA is, in part, a rental establishment of transient and total boat slips to the public.

66. ISLAMORADA provides overnight harboring and other marina services, including the use of a boat ramp, dockage, and refueling, to the collective boating community in Planation Key, Windler Key, Upper and Lower Matecumbe Keys, and the four Keys within Monroe County, Florida.

67. ISLAMORADA operates, manages, controls, and regulates a place of public accommodation: specifically the subject handicap accessible bathroom and shower located within the area including the (a) marina; (b) Founder's Park; and (c) other parks, beaches, and green spaces – all accessible to the public for distinct fees.

68. ISLAMORADA denied FACSINA services of a public accommodation, specifically the access and use of the only compliant handicap accessible bathroom with shower on the premises.

69. The services to access and use the handicap accessible bathroom with shower were made available to similarly situated persons outside FACSINA's protected class, specifically ISLAMORADA employees, staff and Monroe County Sherriff's Office personnel.

## COUNT IV: BREACH OF CONTRACT
### (AGAINST ISLAMORADA)

70. FACSINA reasserts and incorporates by reference paragraphs '1' through '48' as if fully stated herein.

71. In April 2012, FACSINA (and her husband) and ISLAMORADA entered into a boat slip contract, which is attached hereto as **Exhibit A**.

72. ISLAMORADA breached the boat slip contract by failing to fulfill ordinary duties and obligations required, including: ensuring that all visitors and residents, including visitors and residents with disabilities, are able to access and use all of ISLAMORADA's programs, services and activities – specifically access and use of a handicap accessible bathroom with shower; and providing ADA compliant alternative methods for FACSINA.

73. Each breach of obligation on the part of ISLAMORADA was material.

74. FACSINA performed all of her obligations, including submitting payment for ISLAMORADA's services on time and sometimes in advance, per the boat slip contract.

75. FACSINA has directly and proximately suffered damages by ISLAMORADA's material breach.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ISLAMORADA and WATTS)

76. FACSINA reasserts and incorporates by reference paragraphs '1' through '48' as if fully stated herein.

77. Prior to December 25, 2017, ISLAMORADA and ISLAMORADA Dock Master, Lisa Watts, knew of FACSINA's condition as to her catastrophic leg injury and accompanying physical impairment.

78. Prior to December 25, 2017, ISLAMORADA and ISLAMORADA Dock Master knew of FACSINA's use of a service dog.

79. ISLAMORADA and ISLAMORADA Dock Master knew of FACSINA's access and use of the entry-coded handicap accessible bathroom with shower.

80. ISLAMORADA Dock Master changed the entry code to the handicap accessible bathroom in question.

81. On January 2, 2018, ISLAMORADA Dock Master questioned, by means of an intimidating tone, to the point of uncomfortable interrogation FACSINA on her disabilities.

82. ISLAMORADA Dock Master determined based on her own personal perception, observation, and knowledge determined that FACSINA was either: no longer handicapped or needed to provide sufficient proof.

83. ISLAMORADA and ISLAMORADA Dock Master denied access and use of the handicap accessible bathroom and shower facility to FACSINA.

84. Thereafter, ISLAMORADA and ISLAMORADA Dock Master continued to deny FACSINA access and use of the handicap accessible bathroom for no valid reason.

85. ISLAMORADA and ISLAMORADA Dock Master intended to cause FACSINA emotional distress in denying access and use of the handicap accessible bathroom, which she had been granted access to and using without issue for six years prior to the denial.

86. ISLAMORADA's and ISLAMORADA Dock Master's conduct was reckless in that they knew of FACSINA's physical impairments precipitating the grant of access to and use of the handicap accessible bathroom, yet suddenly and without valid reason denied FACSINA access and use of the subject bathroom.

87. ISLAMORADA's and ISLAMORADA Dock Master's actions in continual denial of access and use of the handicap accessible bathroom to FACSINA constitute outrageous conduct beyond the bounds of decency intolerable in a civilized community.

88. As a direct and proximate result of ISLAMORADA's and ISLAMORADA Dock Master's actions, FACSINA suffered severe emotional distress and physical anguish.

## PRAYER FOR RELIEF

**WHEREFORE**, FACSINA respectfully requests that this Honorable Court enter judgment in against the Defendants and grant:

i.   Compensatory and consequential damages, including damages from her personal experience of being denied access, humiliation, psychological trauma, emotional distress, embarrassment, anxiety, and pain and suffering;

ii.  Mental anguish, loss of dignity, and punitive damages;

iii. All economic losses on all claims allowed by law;

iv.  Attorney's fees and the costs associated with this action;

v.   Pre- and post-judgment interest at the lawful rate; and

vi.  Any further relief that deemed just, proper, and as allowed by law.

## DEMAND FOR JURY TRIAL

FACSINA demands trial by jury on all issues so triable under the law.

DATED: January 8, 2021

Respectfully Submitted,

By: *Jonathan A. Gasso*
Jonathan A. Gasso, Esq.
Florida Bar # 120465

GASSO LAW FIRM
848 Brickell Ave., Suite 830
Miami, Florida 33131
Tel: (305) 222-7246
Email: Jonathan@gasslawfirm.com

*[THIS SPACE HAS BEEN INTENTIONALLY LEFT BLANK]*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed and served on all named parties at the email address(es) designated for service with the Clerk of Court on this 8th day of January 2021 in accordance with Rules 2.516 and 2.525, Florida Rules of Judicial Administration.

By: *Jonathan A. Gasso*

Jonathan A. Gasso, Esq.

EXHIBIT A

*fees when we were first there*

# PLANTATION YACHT
# HARBOR MARINA

(305) 852-2381
87000 OVERSEAS HWY
ISLAMORADA, FL 33036
FAX #: (305) 852-5817
marinainfo@islamorada.fl.us

## RATE SHEET
### EFFECTIVE OCT. 1, 2009

**MONTHLY DOCKAGE:**

Bulkhead Dock:
B03-B32                         $21.00 per ft/per month
                                40 foot minimum

B01-B02                         $19.00 per ft/per month
                                34 foot minimum/39 foot maximum

Long Dock:                      $21.00 per ft/per month
                                40 foot minimum

T-Dock (outside):               $21.00 per ft/per month
                                30 foot minimum

T-Dock (inside):                $21.00 per ft/per month
                                No minimum length          House boat slips
                                                           $16.00 per ft/per month

Addt'l Boat/Trailer Storage:    $50.00 per month 15 ft and under
                                $100.00 per month over 15 ft not
                                to exceed 25 ft

**(prices do not include metered electric/water/cable or tax.)**

# Special Rate Packages Available:

6 month plan .......... 5% discount
12 month plan ......... 10% discount

**DAILY DOCKAGE:**

$2.50 per ft/per day
(electric and water included)

**RESERVATIONS ACCEPTED 60 DAYS IN ADVANCE**

EXHIBIT B







EXHIBIT C

# THE AMERICAN KENNEL CLUB

*This certifies that*

**NOEL**

*Owned by*

**LAURIE A SASALA**

*successfully passed the Canine Good Citizen® Test on*

**OCTOBER 2, 2013**

*and has been listed in the Canine Good Citizen Archives*
*by the American Kennel Club*

Mary R. Burch
*Canine Good Citizen Director*



**This is my Service Animal and these are my rights under the Federal Law and the American Disability Act**

**A Business may ask...**
If an animal is a service animal or ask what tasks the animal has been trained to perform.

**A Business may NOT...**
1) Require specail fees or ask for the animal
2) Ask about the person's disability
3) Charge extra fee for the disabled handler or service animal
4) Isolate a disabled person or their 'service animal, or treat them less favorably than other customers

A person with a disability cannot be asked to remove his service animal from the premises unless:
(1) the animal is out of control and the animal's owner does not take effective action to control it
or (2) the animal poses a direct threat to the health or safety of others.
In these cases, the business should give the person with the disability the option to obtain
goods and services without having the animal on the premises.

Businesses that sell or prepare food must allow service animals in public areas even
if state or local health codes prohibit animals on the premises.

**Violators of the ADA can be required to pay money damages and penalties.**

EXHIBIT D







#2 DISABLED BATHROOM-

EXHIBIT E

January 16, 2018

Lisa Watts, Dockmaster

Plantation Yacht Harbor

87000 Overseas Highway

Islamorada, Florida 33036

Dear Ms. Watts:

I am writing to you, to address my concerns, regarding denial of my access to disabled facilities at the marina at Plantation Yacht Harbor in Founders Park.

We have been occupants of a slip at PYH since the spring of 2012.  For the last six years, I have been using the disabled restroom due to a catastrophic leg injury which necessitated the installation of metallic plates and pins in my leg, atrial fibrillation, which can be brought on by stress and over-exertion, and reduced lung-capacity from a childhood illness.  The disabled restroom has a seat and rails in the shower which allows me to shower without the risk of over-exertion or falling over on my damaged leg.

Recently, the code to access the disabled restroom was changed.  When I arrived at the marina on 12/25/2017, I could not access the facility.  The next day, 12/26, I requested the code from an assistant dockmaster.  I was informed that he was unable to give me the code because someone was sharing the code, and that the dockmaster had instructed the staff that only she could give the code out.   Secondly, he informed me that the disabled restroom was "the only restroom the marina staff and Monroe County Sheriff personnel could use".

On 1/2/2018 , I visited you at the marina office and requested the code.  Again, I was denied the code and you repeated the reasons previously given by the assistant dockmaster, and told me someone had complained about seeing someone "walk out of the handicapped restroom/shower".  I reminded you that I have been using the disabled restroom since my injury six years ago and needed to continue to use it due to my disability.  You informed me that I had to provide you with a letter from a doctor detailing my need to use the disabled restroom before providing me with the code.

I again request that I be given the restroom code within three days of receipt of this letter either via telephone at 216-789-2640 or by email at laurie.sasala@gmail.com.

I thank you for your attention to this matter.

Laurie Facsina

EXHIBIT F

**FLORIDA COMMISSION ON HUMAN RELATIONS**
2009 Apalachee Parkway, Suite 100, Tallahassee, Florida 32301

RECEIVED
FLORIDA COMMISSION ON
HUMAN RELATIONS
Date Stamp (FCHR Use Only)

2018 DEC 18   AM 11: 46

PUBLIC ACCOMMODATION
COMPLAINT OF DISCRIMINATION

**A. PERSONAL INFORMATION**

Name: Laurie Anne Facsina

FCHR No.

E-Mail Address: laurie.sasala@gmail.com   Date of Birth: 1/7/1960

Mailing Address: 2950 Cannon Road

Home Telephone Number (area code): 216-789-2640

City, State, and Zip Code: Twinsbury, Ohio 44087

Work (if possible to call you there): Same as above

**B.** List the public lodging, private club and/or public food service facility that discriminated against you.

Name: Plantation Yacht Harbor at Founders Park   (Restaurant, Club, Lodging) Lodging/Public Marina   Telephone Number: 305-852-2381

Street Address (Florida location): 87000 Overseas Hwy

City, State and Zip Code: Islomorada, Fl 33036   County: Monroe

**C.** CAUSE OF DISCRIMINATION BASED ON - Check appropriate box(es)
☐ RACE   ☐ COLOR   ☐ SEX   ☒ HANDICAP   ☐ RELIGION
☐ NATIONAL ORIGIN

DATE MOST RECENT DISCRIMINATION TOOK PLACE (month, day, year): 1/16/2018

**D. DISCRIMINATION STATEMENT**

I believe I have been discriminated against pursuant to Florida Statute, Chapter 509/760 for the following reason(s):

Repeated denial of access to the only handicap bathroom and shower at the above-mentioned facility. The dockmaster, Lisa Watts, was aware of my disability.

I repeatedly asked for the access code, to the handicap bathroom and shower, and was repeatedly denied that access.

I REQUEST TO BE AFFORDED FULL RELIEF TO WHICH I AM ENTITLED TO UNDER THE LAW(S).

**E.** VERIFICATION. Under penalties of perjury, I declare that I have read the foregoing charge of discrimination and that the facts stated in it are true. I will advise the agency if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

SIGNATURE OF COMPLAINANT: Laurie Facsina

DATE: 12/13/2018

FCHR Charge Form – Revised December 9, 2003

EXHIBIT H



### *State of Florida*
## Florida Commission on Human Relations
*An Equal Opportunity Employer • Affirmative Action Employer*

**Ron DeSantis**
*Governor*

4075 Esplanade Way • Room 110 • Tallahassee, Florida 32399-7020
(850) 488-7082 / FAX: (850) 487-1007
http://fchr.state.fl.us
*United in One Goal: Equal Opportunity and Mutual Respect*



**Latanya Peterson**
*Chair*
**Michelle Wilson**
*Executive Director*

FCHR No. 201915451

Laurie A. Facsina                                        **COMPLAINANT**
c/o Gregory A. Moore, Esquire
Gregory A. Moore, P.A.
7951 Riviera Boulevard, Suite 201
Miramar, Florida 33023

Islamorada, Village of the Islands, d/b/a                **RESPONDENT**
Plantation Yacht Harbor Marina
c/o Milton R. Collins, Esquire
Weiss, Serota, Helfman, Cole & Bierman
1200 North Federal Highway, Suite 312
Boca Raton, FL 33432

### DETERMINATION: REASONABLE CAUSE

Complainant filed a complaint of discrimination alleging that Respondent violated the Florida Civil Rights Act of 1992 (FCRA). The Florida Commission on Human Relations (FCHR) has completed its investigation of this matter. Complainant alleged Respondent discriminated against her by withholding access to the full use and enjoyment of its public accommodation facilities based on her disability (physical). Respondent stated it does not fall under the statutory definition of a public accommodation, but if it did, it still provided Complainant equal access to its facilities.

It is undisputed that during the period of 2014-2017, Respondent permitted Complainant to use an entry-coded handicap accessible bathroom. Complainant used this bathroom until Respondent changed the key code sometime in late 2017.

Respondent claimed the code was changed because: (1) a new resident (who was in a wheelchair) was going to begin living at the marina in 2018 and reasonable rules needed to be established; (2) the new dockmaster informed Complainant that only handicapped persons would be permitted to use the coded facilities; and (3) the new dockmaster wanted Complainant to provide Respondent with proof of her disability if she wished to continue using the coded disabled facilities. Respondent also stated there were other non-coded handicapped facilities on its premises to which Complainant had access and could use.

**COMMISSIONERS**

| Dr. Donna Elam | Mario Garza | Al McCambry | Latanya Peterson, *Chair* |
|---|---|---|---|
| *Port Richey* | *Lakewood Ranch* | *Lynn Haven* | *Fleming Island* |
| | *Jay Pichard* | *Gilbert Singer* | |
| | *Tallahassee* | *Tampa* | |

Complainant provided medical documentation to FCHR which showed she has one or more qualifying disabilities under the FCRA. Complainant stated she requested continued access to the coded facilities she had been using, but Respondent denied her request. Complainant stated she did not provide the medical documentation requested by Respondent because she had already provided it in 2012 when she was first given the access code. Complainant also stated she could not use the other marina facilities because the one with the coded access was the only one which had the ADA compliant shower that she required.

Complainant has shown that she was denied the full use and enjoyment of Respondent's premises; that her medical conditions qualify as disabilities under FCRA; and that the denial was related to her disability. Notwithstanding Respondent's claims otherwise, Respondent meets the definition of a public establishment under FCRA for the following reasons: On its webpage, Respondent's amenities list includes a tiki-style social pavilion and access to facilities and activities at the adjacent park. Likewise, in its own brochure Respondent lists: public beach access; swimming pool; tennis courts; dog park; nature walk; and work-out area – all of which are located in Founder's Park. This brochure also states that Respondent is located in Founder's Park.

Respondent articulated reasons it denied Complainant continued access to the disabled bathroom and shower, but Respondent failed to meet its burden of proving a legitimate, nondiscriminatory reason for doing so. Respondent did not sufficiently explain why the addition of a new wheelchair bound resident would prevent continued disabled restroom/shower access by Complainant; Respondent failed to present evidence to support why the new dockmaster determined Complainant was no longer handicapped; and Respondent also did not provide evidence regarding the new policies, procedures or requirements by which everyone would need to comply when requesting to use the coded disabled facilities. As such, there is reasonable cause to believe that Respondent discriminated against Complainant by denying her continued access and the full use and enjoyment of its facilities.

On the basis of the report from the Commission's Office of Employment Investigations and recommendation from the Commission's Office of General Counsel, pursuant to the authority delegated to me as Executive Director of the Florida Commission on Human Relations, I have determined that reasonable cause exists to believe that an unlawful practice occurred.

DATED: June 11, 2020

Michelle Wilson, Executive Director

EXHIBIT I

From the Desk

Of

Dr. Mark Pace

Cleveland Clinic

January 26, 2018

To Whom it May Concern:

RE: Laurie A. Facsina

Laurie has been my cardiac patient for six years, for the condition known as Atrial Fibrillation.  At the beginning of our Doctor/Patient relationship, Laurie also suffered a catastrophic leg injury, with the result being a reconstructed Tibial Plateau (rod, screws and cadaver bone).

Laurie also uses a service dog, as needed.

Sincerely,

FCHR No.: 201915451

# FLORIDA COMMISSION ON HUMAN RELATIONS
## MEDICAL CERTIFICATION FORM

**Laurie A Facsina** (hereafter "Complainant") has filed a discrimination complaint with the Florida Commission on Human Relations based upon disability.  Complainant has requested the following accommodation:

*Use of handicap shower*

In order to help us conduct our investigation of this complaint, we are requesting certain information from you, as the physician who treats Complainant.

Florida law and the Americans with Disabilities Act define a person with a disability to include: (1) individuals with a physical or mental impairment that substantially limits one or more major life activities; (2) individuals who are regarded as having such an impairment; or (3) individuals with a record of such an impairment.

The term "physical or mental impairment" includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human Immunodeficiency Virus infection, mental retardation, emotional illness, drug addiction (other than addiction caused by current, illegal use of a controlled substance), and alcoholism.

The term "substantially limits" suggests that the limitation is "significant" or "to a large degree."

The term "major life activity" means those activities that are of central importance to daily life, such as seeing, hearing, walking, breathing, performing manual tasks, caring for one's self, learning, and speaking.    This list of major life activities is not exhaustive.

Please answer the following questions:

1. Are you Complainant's treating medical professional with knowledge of Complainant's medical condition and history?                                                ☑YES   ☐NO

   **If no,** there is no need to complete the remainder of this form.  Please just sign, date, and return to the Commission.

2. Does Complainant have a physical or mental impairment that substantially limits one or more major life activities?
   ☑YES   ☐NO

   **If no,** there is no need to complete the remainder of this form.  Please just sign, date, and return to the Commission.

3. Please indicate which major life activity is affected and describe how it affects Complainant.  Check all that apply.

FCHR No.: 201915451

____✓ Breathing:

_____ Doctor/Patient Privilege

_____

____✓ Caring for One's Self:

_____ Doctor/Patient Privilege

_____

_____ Hearing:

_____

_____

_____ Learning:

_____

_____

_____ Performing Manual Tasks:

_____

_____

_____ Seeing:

_____

_____

_____ Speaking:

_____

_____

FCHR No.: 201915451

✓ Walking:

_Doctor / Patient Privilege_

____ Other: _____

4.   In your professional, medical opinion is the above-described accommodation **reasonably necessary** in order for Complainant to be able to perform the requisite functions of his/her employment position or to afford Complainant the full and equal enjoyment of a place of public accommodation.        ☑YES   ☐NO

**If yes,** please describe how the requested accommodation would lessen the effects of Complainant's disability or facilitate Complainant's ability to function.

I affirm that the above statements are true.

_Mark P. Pace DO_
Signature of Medical Professional

_Mark P. Pace, DO_
Printed Name and Title

_4/24/2019_
Date

_Cardiology_
Area(s) of Specialty